PEOPLE *ex rel.* PURSER, appellants, v. GREEN, comptroller, etc.

*New York city — opening streets — clerical services to commissioners — Mandamus.*

Certain acts of the legislature (Laws 1813, chap. 87; 1867, chap. 697) provided for a compensation to commissioners appointed in proceedings for opening streets in the city of New York, for their own services, and "reasonable expenses," for "clerk hire" and "necessary disbursements for clerical services," all of which were to be ascertained, and taxed and paid to said commissioners. *Held,* that no power was conferred upon the commissioners to employ a clerk who would thereby take an official or other relation toward the city entitling him, as an independent officer or agent, to perform duties or services for which the corporation would be bound, *ex contractu,* or otherwise, to pay him.

No privity of contract springs up between the corporation and a person employed by commissioners as clerk, or to perform any other labor for the expense of whose services they are to be allowed as disbursements. And although such person has no right of action, mandamus will not lie to enforce a claim for his services.

APPEALS from orders of the special term denying motions for writs of mandamus. The proceedings were instituted in behalf of George H. Purser, the relator, to compel the payment by Andrew H. Green, comptroller of the city of New York, of claims by said relator for services as clerk employed by commissioners in various street openings in that city. The facts appear sufficiently in the opinion.

*T. C. T. Buckley, A. J. Vanderpoel* and *Allison & Shaw,* for appellants.

*E. Delafield Smith,* and *Dexter A. Hawkins,* for respondent.

DAVIS, P. J. The relator moved, at special term, in ten cases (all having the same title), for peremptory writs of mandamus, commanding the respondent, as comptroller, etc., to pay to him divers sums, amounting in the aggregate to $113,550.24, besides interest for his services as clerk, in divers street openings in said city, and in laying out Riverside park, and for alleged room rent, and for services in copying reports in said matters.

The affidavits on the part of the respondent, read in opposition to the motion, deny in substance that the respondent has in his

hands, or under his control, money collected in said several matters sufficient to pay said demands respectively, or any part of them; and that he has any special fund for that purpose. And they alleged also in substance that the relator has been paid, within the last five years, upon similar claims, in the matter of other street openings, the sum of $132,058.50, which was more than an adequate compensation, and more than he was equitably entitled to receive for all the services he has rendered, and room rent furnished in said proceedings; and that the city is entitled to set up the said excessive payment as an offset or counter-claim in an action for his present demands. The respondent also insists that the relator has an adequate remedy by action, if he is entitled to any remedy.

The court, at special term, denied the several motions, on the ground, as stated in the orders, that the relator has a remedy by action.

If the relator have any claim against the city, which can be enforced either by action or mandamus, for the several demands specified in his affidavits, it must arise under, and depend upon the provisions of the statutes relative to street openings, and the laying out of said Riverside park, to which such proceedings in street openings, so far as they affect the questions arising here, are applied. See Laws of 1867, chap. 697, § 6. Section 189 of chapter 87 of the Laws of 1813 (Valentine's Laws, 1207) provides: "That the commissioners appointed under and by virtue of this act, for any of the purposes aforesaid, who shall enter upon the duties of their appointment, shall each be entitled to receive the sum of not more than $4, besides all reasonable expenses for maps, surveys and plans, clerk hire, and other necessary expenses and disbursements, for each day they shall respectively be actually employed in the duties of their appointment — the same to be paid by the mayor, aldermen and commonalty of the city of New York, and included in the before-mentioned assessment upon the persons and parties deemed to be benefited by the operation and improvement which shall have occasioned the appointment of said commissioners." Section 12 of the act of April 20, 1839 (Laws of 1839, chap. 209), made provision for the taxation of the costs, charges and disbursements provided for in the above section of the act of 1813. The act entitled "An act to prevent fraud in the opening and laying out of streets and avenues in the city of New York," passed April 24, 1862 (Laws, 1862, chap. 483), provides that the compensation to the

commissioners, in any proceeding thereafter to be commenced, for the opening or altering of any street, in the city of New York, north of Fourteenth street, shall not exceed in the aggregate, exclusive of necessary disbursements thereinafter mentioned, the sum of thirty cents a foot for the lineal extent of the street or avenue, or the portion thereof to be opened or altered (§ 1); and the fifth section of that act declares " that no costs, charges or expenses of any description shall be allowed in such proceedings, or charged on any lands affected thereby, except the compensation of the commissioners, as above limited, and their necessary disbursements for clerical services in copying, comparing or correcting said maps or profiles, extracting boundary lines from title papers, preparing the said diagrams and extracts, and keeping the proper minutes of said proceedings; and also for surveys and maps thereof when specially directed by the court; and also for room rent actually paid but in no case to exceed $1 per day; for advertising, printing, or posting any notices required by law, and for any other necessary incidental expenses not exceeding $100." The sixth section of the same act provides for the taxation of the bill of costs, charges and expenses, and for the notice to be given thereof. The relator in his several affidavits states that he was appointed by the commissioners their clerk, and employed by them to draft and copy their reports, " which rendered it necessary to employ a large number of clerks and others, and to hire certain rooms used by said commissioners and clerks."

It was understood to be conceded on the argument by the respective counsel, that the authority of the commissioners to appoint or employ the relator as clerk is to be found altogether in the section of the act of 1813 above quoted ; and if it were not so conceded, it is apparent that the whole of such power is derived from the language of that section and the subsequent modifications thereof above referred to.

It will be seen, therefore, that section 189 of the act of 1813 is simply declaratory of what the commissioners are entitled to receive from the mayor, aldermen and commonalty of the city of New York. To them is allowed a per diem for each commissioner not exceeding $4 per day, and their " reasonable expenses for maps, surveys and plans, clerk hire and other necessary expenses and disbursements." The act of 1862 modifies the compensation of the commissioners, so far as to declare that it " shall not exceed in the

aggregate, exclusive of the necessary disbursements hereinafter mentioned, the sum of thirty cents per foot for the lineal extent of the street or avenue opened ; " and it defines, in the sixth section, with more precision, the " necessary disbursements " that may be allowed, by pointing out to what the clerical services shall be limited, and when surveys and maps thereof may be included ; what sum per day of room rent actually paid may be allowed, and what advertising, printing and posting, and then closes the door on all other incidental expenses beyond the limitation " not exceeding $100."

All these acts provide for nothing more or less than compensation to the commissioners for their own services and expenses and disbursements, all of which are to be ascertained and taxed, and paid to said commissioners, according to the provisions and restrictions of clearly expressed statutes. Undoubtedly the commissioners had power to employ the relator or any one else to perform clerical services. That power is necessarily implied in the words " reasonable expenses " for " clerk hire," as it is stated in section 189 of the act of 1813, and in words " necessary disbursements for clerical services," as it is expressed in the act of 1862 ; nor is there any doubt that such reasonable expenses and necessary disbursements, when properly and lawfully ascertained, are to be paid to the commissioners.

But it is quite another question whether power is conferred to appoint a clerk, who thereby takes an official or other relation toward the city, entitling him as an independent officer or agent to perform duties or services for which the corporation is bound, *ex contractu*, or otherwise, to pay him, or be subject to mandamus or action. The phrase " expenses of clerk hire," has no greater force to create such relation between the person who performs the clerical service and the city than the words " horse hire," in like connection, would have had to establish like relations between the city and the owner of a horse that might be temporarily hired. In short, the expenses of clerical services given by the law fall, like all the other necessary disbursements paid or incurred by the commissioners, into the sum to be paid to the commissioners themselves under the general terms of " compensation " and "reasonable expenses " used in the statute.

No privity of contract springs up between the corporation and a person employed as clerk, or to perform any other labor, by the

commissioners, for the expense of whose services they are to be allowed as disbursements under the statute; nor does any other relation or privity, for such persons are bound to take notice of the law and to see that the statute provides for payment of the expenses incurred in their employment to the commissioners as taxable disbursements, and that no other mode of compensation is created; and they are bound, therefore, to know that their principal is the commissioners, in whose service they are, and through whom alone their compensation is to be paid. If this were not so, every laborer employed by the commissioners, of whatsoever grade, and every person who furnishes any article coming within the term "necessary disbursements," is at liberty to sue the corporation or to mandamus its officers. It is no answer to this view to say that it imposes too great a responsibility upon the commissioners. They take their position *cum onere* under the statute; and, besides, there is no difficulty on their part, as they may always arrange that payment of such disbursements as may be deemed burdensome shall be made to their employees when payment thereof shall be made to them by the corporation in accordance with the statute.

Such disbursements are to be taxed under the statute as a part of the bill of costs, charges and expenses allowed to the commissioners, and to be paid to them by the mayor, aldermen and commonalty of the city; and there is no provision for taxation of the items of disbursements in such bills in favor of other officers or persons.

No higher right to prosecute the writ of mandamus is given to the relator by the fact that taxation has been made of his charges. If the taxation has been separate and in his favor, as an individual claim against the city, it is probably irregular and without effect; if as part of the reasonable expenses of the opening of the streets, in favor of the commissioners, the claim is one for them to enforce, if it can be enforced at all, by suitable legal proceedings in their own names.

The fact that under the proceedings in the last five years for the opening of streets, the position of clerk to the commissioners has assumed the magnitude of a department calling for compensation almost equal to $50,000 a year, has no just legal effect upon the question involved in these cases. It is enough that the relator and the claim he attempts to assert occupy no position entitling him to demand the writ of mandamus against any officer of the city.

The court below did not consider this question, as it appears not

to have been presented, but if the relator has by any possibility a personal right of recovery against the city it must exist in some implied assumpsit springing out of his employment by the commissioners, for certainly there is no provision of statute for any payment to be made to him. And in this view his remedy could be pursued by action against the corporation. Justice FANCHER, whose opinion in the court below, dissenting from the conclusion of BARRETT, J., has been furnished us, recognizes the absence of privity between the relator and the corporation. He says, as his first reason why a mandamus should be issued: "There is no privity of contract between the relators and the corporation. The work performed by them was performed for the commissioners, and is for the benefit of the general public, and not alone for the corporation. Nor are they employees of the corporation."

Assenting substantially to the premises of the learned judge, we are unable to yield to the conclusion that, for this reason, a mandamus will lie. No creditor has a right of action for his debt against a debtor of his debtor, but that fact goes no distance toward establishing that such creditor may have the writ of mandamus to reach moneys owing to his debtor. They are strangers in law, and no form of proceeding is in this State availing to make the one directly responsible to the other.

The order appealed from should be affirmed.

*Order affirmed.*